.

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHAWN ALLS,

      Plaintiff,

      v.

M. FRIEDMAN, M.D.; J. WOODFORD, Director, CDCR; DR. AUNY; DR. LUCA; DR. FREDERICK,

      Defendants.

No. C 05-0901 PJH (PR)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

This is a civil rights case filed pro se by a state prisoner. Plaintiff contends that defendants were deliberately indifferent to a serious medical need. Before the court for ruling is defendants' unenumerated motion to dismiss in which they contend that plaintiff failed to exhaust his administrative remedies and that his supplemental state law claims are barred because his tort claim was untimely. The motion is unopposed.

**DISCUSSION**

*1.    Defendants' claim that plaintiff has failed to exhaust*

Section 1997e of title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although once within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. *Porter v Nussle*, 122 S. Ct. 983, 988 (2002). All available remedies must now be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id*. (citation omitted). Even when the prisoner

seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v Churner*, 532 U.S. 731, 741 (2001). Similarly, exhaustion is a prerequisite to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 122 S. Ct. at 992.

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *See id.* § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. *See id.* § 3084.5; *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). A final decision at the director's level satisfied the exhaustion requirement under § 1997e(a). *Id.* at 1237-38.

Nonexhaustion under § 1997e(a) is an affirmative defense. *Jones v. Bock*, 127 S. Ct. 910, 919 (2007); *Wyatt v Terhune*, 315 F.3d 1108, 1119 (9th Cir 2003). It should be treated as a matter of abatement and brought in an "unenumerated Rule 12(b) motion rather than [in] a motion for summary judgment." *Id.* (citations omitted). In deciding a motion to dismiss for failure to exhaust administrative remedies under § 1997e(a), the court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20.

If the court concludes that the prisoner has not exhausted California's prison administrative process as to any of the viable claims in the complaint, the proper remedy is dismissal without prejudice. *Id.* at 1120. The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint, however. *Jones v. Bock*, 127 S. Ct. at 925-26 (rejecting "total exhaustion-dismissal" rule); *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005) (same).

2

The proper treatment of a mixed complaint, i.e., a complaint with both exhausted and unexhausted claims, will depend on the relatedness of the claims contained within. *Id.* at 1175. When a prisoner has filed a mixed complaint and wishes to proceed with only the exhausted claims, the district court should simply dismiss the unexhausted claims when the unexhausted claims are not intertwined with the properly exhausted claims. *Id.* On the other hand, when a plaintiff's mixed complaint includes exhausted and unexhausted claims that are closely related and difficult to untangle, dismissal of the defective complaint with leave to amend to allege only fully exhausted claims, is the proper approach. *Id.* at 1176.

    Compliance with prison grievance procedures is all that is required by the PLRA to properly exhaust, so the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones*, 127 S. Ct. at 923. In California, the regulations permit an administrative appeal to be filed as to "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a)." As to content, the regulations only instruct the prisoner to "describe the problem and action requested... ." *Id.* at § 3084.2(a). It is not necessary that every person sued have been named in the grievance. *Jones*, 127 S.Ct. at 923.

    Because defendant's motion is supported by a declaration from the Chief of the Inmate Appeals Branch and exhibits showing what grievances were filed, and because plaintiff has chosen not to argue to the contrary, the court adopts defendants' contention that the only grievance in which plaintiff raised these claims was log number 03-01423. The issue, then, is to what extent this grievance sufficed to exhaust the claims in this case.

    This is how the court described the allegations of the complaint in the initial review order:

> In 2002, plaintiff had the fungus disease valley fever, though he did not know it. He suffered from chest pain, dry cough, headaches, fever, weight loss, loss of strength, and aching bones. He was taken to the infirmary when he passed out; defendant Dr. Aung ordered an x-ray, which showed no problem, and prescribed antibiotics, antihistamines and Tylenol, allegedly as

3

United States District Court
For the Northern District of California

> treatment for a cold. Plaintiff's condition worsened. He began vomiting, allegedly as a result of the antibiotics. He asserts that Dr. Aung's decision to take the easier course of treating plaintiff's medical problem as a cold, rather than investigating further, was influenced by a state budget crisis, which had resulted in pressure to cut costs. This is sufficient to allow the federal and state claims against Dr. Aung to proceed.
>
> On October 31, 2002, plaintiff saw defendant Dr. Luca. He vomited several times in the course of the examination. Dr. Luca sent him to an outside hospital. At the hospital a tear in his "chest tissue" was found and blood in his urine, but apparently valley fever was not diagnosed. When he returned to the prison Dr. Luca found that he was running a high fever and committed him to the infirmary for three days. On November 21, 2002, Dr. Luca diagnosed valley fever and began treatment. After two months Dr. Luca took him off the treatment, despite his pleas that he still had symptoms. Plaintiff asserts that the lack of proper care, and in particular Dr. Luca's taking him off treatment too soon, was caused by the budget crisis. These allegations are sufficient to allow the federal and state claims against Dr. Luca to proceed.
>
> [Plaintiff's claims against defendant Dr. Frederick are omitted because they have been dismissed.]
>
> Plaintiff asserts that defendants Woodford, the Director of the CDC, and Dr. Friedman, the Chief Medical Officer at the prison, were responsible for the lack of adequate provision for medical care caused by their response to the budget crisis. This is sufficient to state a claim against them.

The claims can be summarized as being that Dr. Aung failed to properly diagnose his illness and initially treated it as a cold, in part because of budget considerations; Dr. Luca ended treatment prematurely because of budget considerations and against plaintiff's protests; and Woodford and Friedman failed to provide the prison with a system to deliver proper care because of budget considerations.

The complaint and the grievance are quite similar, down to identical language in some places, but notably missing from the grievance is any contention that the poor care was because of budget considerations or a defective health care program. Plaintiff's claims against Woodford and Friedman therefore are not exhausted. Because these claims are not intertwined with those against the other defendants, they can be dismissed by the court without requiring plaintiff to amend. *See Lira*, 427 F.3d at 1176.

The claims against Dr. Aung and Dr. Luca, however, are exhausted, and will not be dismissed on this ground.

///

///

### 2. *Claim by defendants Aung and Woodford that due process claim is unexhausted*

Defendants Aung and Woodford read the amended complaint to contain an attempt by plaintiff to state a claim that they violated a purported due process right to "safety," in addition to his Eighth Amendment right not to be subjected to deliberate indifference to a serious medical need, and allege that this claim is not exhausted. Although Aung and Woodford interpret this contention as going only to them, the court's reading is that plaintiff asserts this claim against all defendants. Pet, handwritten addendum at 4.

Aung and Woodford allege that this claim has not been exhausted, as it is not mentioned in the grievance. The court concludes that it is not necessary to allege legal theories in order to exhaust in the California prison system. As noted above, the terms of the state's grievance system control what must be alleged in order to exhaust, *see Jones*, 127 S. Ct. at 923, and California's requirement that the prisoner describe "the problem" does not require legal allegations. Because plaintiff provided the facts of his "problem," he has exhausted his contention that the doctors did not give him proper medical treatment, which is sufficient to exhaust any federal claim arising directly from that problem, whatever the theory of recovery.[1]

### 3. *State law claims*

Defendants assert that the court lacks subject matter jurisdiction to consider plaintiff's state law claims for medical malpractice and negligence because his tort claim was untimely and because he did not exhaust his administrative remedies.

The court grants defendants' request to take judicial notice of the proffered documents, a request for all medical care claims made by plaintiff since October of 2000, a copy of his tort claim that was rejected as untimely, and a certification by the custodian of

---

[1] The grievance did not describe the "problem" that lies at the heart of plaintiff's claims against Woodford and Friedman, in that it did not contain any factual claim that they instituted a policy and that the policy was defective to such a degree as to cause a violation of plaintiff's rights. It simply was not a "this prison has an inadequate medical care program" grievance. That is why the court has concluded in the section above that plaintiff did not exhaust his claims against Woodford and Friedman.

1  records that the other two documents are true and correct copies.  See *United States v.*
2  *Ritchie,* 342 F.3d 903, 908 (9th Cir.2003) (on a motion to dismiss the court may consider
3  documents attached to complaint, documents incorporated by reference into complaint, or
4  matters of judicial notice, without converting the motion to dismiss into motion for summary
5  judgment).  Because plaintiff has not opposed the motion there is nothing to the contrary in
6  the record.

7  Before a state law claim can be brought, whether in state or federal court, the
8  California Tort Claims Act ("CTCA") requires that the claim be presented to the Victim
9  Compensation and Government Claims Board.  *See* Cal. Gov. Code § § 911.2, 945.4;
10 *Hernandez v. McClanahan*, 996 F.Supp. 975, 977 (N.D.Cal. 1998) (failure to present timely
11 California tort claims bars plaintiff from bringing them in federal suit).  The Ninth Circuit has
12 ruled that these procedural requirements (and compliance with them) are "substantive
13 elements of the cause of action." See *United States v. State of California,* 655 F.2d 914,
14 918 (9th Cir.1980).  It is proper for federal courts to determine whether a plaintiff bringing
15 tort claims against a public entity has complied with the CTCA.  *See United States v. State*
16 *of California*, 655 F.2d at 918-19; *Hernandez,* 996 F.Supp. 975 at  979; *Boxall v. Sequoia*
17 *Union High Sch. Dist.,* 464 F.Supp. 1104, 1113 (N.D. Cal. 1979).

18 Defendants have established that plaintiff's tort claim was untimely.  The state law
19 claims will be dismissed.

## CONCLUSION

21 The motion to dismiss (document number 9 on the docket) is **GRANTED IN PART**
22 **AND DENIED IN PART**.  It is **GRANTED** as to all of plaintiff's claims against Woodford and
23 Friedman, state and federal, and as to his state law claims against the other defendants.  It
24 is **DENIED** as to plaintiff's federal constitutional claims against defendants Aung and Luca.
25 **IT IS SO ORDERED.**

27 Dated:  March 15, 2007.

PHYLLIS J. HAMILTON
United States District Judge

28 G:\PRO-SE\PJH\CR.05\ALLS901.EXH